**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| TADANO AMERICA CORPORATION, | |
| Plaintiff, | Civil Case No. _____ |
| v. | |
| BIGGE CRANE AND RIGGING CO., AUTOMATED INVESTING LLC, and SANY AMERICA INC., | **TRIAL BY JURY DEMANDED** |
| Defendants. | |

**COMPLAINT**

Plaintiff, Tadano America Corporation ("Tadano"), by and through its undersigned counsel, files this Complaint against Defendants Bigge Crane and Rigging Co., Automated Investing LLC, and SANY America Inc., and respectfully alleges as follows:

**NATURE OF THE ACTION**

1.    Tadano seeks a preliminary and permanent injunction against each of the Defendants, as a result of their actions that, individually and collectively, constitute willful trademark infringement, unfair competition and false designation of origin, and unjust enrichment. Tadano also seeks such declarations and damages as are described in the allegations that follow.

2.    This matter arises out of a Dealer Agreement entered into between Tadano and Bigge Crane and Rigging Co. ("Bigge") on October 1, 2017 ("Agreement"), concerning certain models of rough terrain cranes and all terrain cranes manufactured by Tadano. A copy of the Agreement is attached as Exhibit 1.

1

3.    Tadano designs and assembles rough terrain and all terrain cranes providing reliable, high-performance lifting solutions for construction and maintenance projects.

4.    Bigge is a construction equipment distributor for Tadano and is authorized to sell and rent Tadano's rough terrain and all terrain cranes in its assigned Territory pursuant to the parties' Agreement.

5.    Tadano has only recently discovered that Bigge and/or its proxy Defendant Automated Investing LLC ("AI") are using Tadano's well-known, if not famous, signature colors and paint scheme of white and blue (the "Tadano Colors") in connection with one category of its multi-manufacturer rental fleet—rough terrain cranes—for which Tadano is well known, and for which Tadano has obtained common law trademark rights.

6.    The Tadano Colors have been improperly and unlawfully used in connection with rough terrain cranes manufactured by SANY America Inc. ("Sany").

7.    On April 3, 2026, Tadano provided notice to Bigge of nonrenewal/termination of the Agreement together with a right to cure under Tex. Bus. & Com. Code §§ 57.154, 57.155. A copy of the letter is attached as Exhibit 2.

8.    By this Complaint, Tadano requests relief from Defendants' actions, including an injunction ordering Defendants to stop using the Tadano Colors in connection with the manufacture and sale of rough terrain cranes, as well as ordering all Defendants to stop using blue carriages with white booms in connection with rough terrain cranes that are not manufactured by Tadano.

9.    By this Complaint, Tadano also seeks a declaratory judgment that it complied with the Agreement and Texas law governing equipment dealer agreements.

## THE PARTIES

10.    Established in 1993, Plaintiff Tadano is a Delaware corporation with its principal place of business in Houston, Texas. Tadano is a subsidiary of Tadano Ltd., a Japanese manufacturer of heavy lifting equipment for more than one hundred years. Tadano offers a diverse product line of mobile cranes including rough terrain cranes, all terrain cranes, truck mounted cranes, and crawler cranes used throughout the construction industry and other industries.

11.    Upon information and belief, Defendant Bigge is a California corporation with its principal place of business in San Leandro, California. Since October 1, 2017, Bigge has served as an authorized distributor of Tadano cranes pursuant to the Agreement.

12.    Upon information and belief, Defendant Automated Investing LLC is a Texas limited liability company with its principal place of business in California.

13.    Upon information and belief, Defendant SANY America Inc. is a Delaware corporation with its principal place of business in Peachtree City, Georgia. Sany is a wholly owned subsidiary of a Chinese corporation known as Sany Heavy Industry.

## JURISDICTION AND VENUE

14.    This is an action arising under the Lanham Act, 15 U.S.C. § 1125(a) and the Declaratory Judgement Act 28 U.S.C. §§ 2201 and 2202. The Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331 and 1338. Supplemental jurisdiction over the state common law claims exists pursuant to 28 U.S.C. § 1367(a) because they are so related to the other claims in the action within the Court's original jurisdiction that it forms part of the same case or controversy.

15.    This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants conduct business in the State of Texas, including selling or renting and

offering to sell or rent rough terrain cranes bearing the Tadano Colors in this District, causing injury to Tadano in Texas and this District. Moreover, Tadano's principal place of business is in Texas and in this District, and Defendant AI is organized under Texas law.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1). Defendant Bigge is deemed to reside in this District because it is subject to personal jurisdiction here. Bigge operates a permanent branch facility at 8300 McHard Rd., Houston, Texas, 77053.[1] This facility serves Houston, Sugar Land, The Woodlands, League City, Conroe, Friendswood, and others in the greater Houston area.



17.    Bigge describes this Houston facility as its "Gulf Coast headquarters for crane rental, equipment service, and parts support."[2] Through this facility, Bigge rents a wide selection of cranes—including rough terrain cranes, the very product category at issue in this action—to customers across Houston and the Gulf Coast for use in energy, petrochemical, infrastructure, and

---

[1] *See* https://www.bigge.com/crane-rental/houston-tx/.
[2] *See* https://www.bigge.com/crane-rental/houston-tx/.

commercial construction projects. Bigge markets its crane rental fleet from the Houston branch under its "Perfect Fleet" branding, sells OEM and aftermarket crane parts, and provides crane service and maintenance to Gulf Coast customers. Bigge actively solicits business within this District, inviting customers to "[c]ontact Bigge for crane rentals, hoists, crane parts, and service across Houston and the Gulf Coast." *Id*.

18.    In addition to its Houston branch operations, Bigge maintains a substantial and ongoing commercial relationship with Tadano, which is headquartered in Houston, Texas. Bigge entered into the Agreement with Tadano on October 1, 2017, and has purchased more than 400 Tadano rough terrain cranes through that relationship, directing those commercial dealings at Tadano in this District. Bigge purchased cranes from Tadano in Texas and took delivery of the Tadano cranes in Texas. Bigge has a reasonable expectation that actions relating to the Agreement will have consequences in Texas. Bigge has purposefully availed itself of the privilege of conducting business in this District, and the claims asserted in this action arise out of and relate to Bigge's contacts with this District.

19.    Further, Section 13.6 of the Agreement provides:

This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without reference to its conflicts of laws principles.

20.    Defendant Sany also operates several dealerships in the Houston area, including (1) "Texas State Rentals" located at 24010 State Hwy 249, Tomball, TX 77375, (2) "Equipment Depot" located at 16330 Air Center Blvd, Houston, TX 77032, and (3) "Equipment Depot" located at 113 W. Murray St. Angleton, TX 77515.[3] Sany's website also identifies "Automated Investing LLC" located at 8300 McHard Road, Houston, TX 77053 as a Sany dealership.

---

[3] https://www.sanyamerica.com/find-a-dealer/.

21.     Defendant Sany purposefully directed the infringing conduct at the State of Texas. Specifically, on information and belief, Sany manufactured and painted the approximately 20 Sany rough terrain cranes in the Tadano Colors with knowledge that those cranes were being acquired by Bigge, a Texas-based authorized dealer of Tadano, and would be deployed from Bigge's Houston facility on jobsites in Texas and the Gulf Coast region. Sany's own website identifies "Automated Investing LLC" located at Bigge's Houston address—8300 McHard Road, Houston, Texas 77053—as a Sany dealership. Sany's purposeful direction of the infringing conduct at Texas satisfies the requirements of due process for the exercise of specific personal jurisdiction.

22.     On information and belief, Defendant AI operates a facility at 8300 McHard Road, Houston, TX 77053 as a dealership.[4] Also on information and belief, AI, on behalf of Bigge, facilitated the purchase of the Sany rough terrain cranes that improperly and unlawfully use the Tadano Colors.



---

[4] https://www.sanyamerica.com/find-a-dealer/.

23.     Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as this is a District where a substantial part of the events or omissions giving rise to the claims has occurred. Bigge operates its Houston branch as a crane rental facility that stocks and rents rough terrain cranes—the same category of cranes that Bigge has repainted to imitate Tadano's distinctive trade dress—to customers in and around Houston and the Gulf Coast. On information and belief, Bigge deploys cranes from its rental fleet, including Sany rough terrain cranes repainted in Tadano Colors, through its Houston branch operations and on jobsites within this District. Bigge markets its "Perfect Fleet" to customers in this District through its Houston branch, creating the impression that its rough terrain crane fleet consists of Tadano products when, on information and belief, its fleet now includes Sany cranes repainted to resemble Tadano cranes.

24.     The consumer confusion that is central to Plaintiff's Lanham Act and common law trademark infringement and unfair competition claims occurs in this District, where Bigge's Gulf Coast customers and end-users encounter cranes bearing Tadano's distinctive trade dress that are not, in fact, manufactured or sponsored by Tadano. Moreover, Bigge directed communications to Tadano at its Houston headquarters concerning the conduct at issue in this action, including correspondence regarding Bigge's repainting of Sany cranes, Bigge's claim of independent rights to a blue-and-white color scheme, and the parties' negotiations regarding the distributor relationship. Tadano has experienced commercial harm—including damage to its brand reputation, loss of sales, and injury to its distribution network—at its principal place of business in this District as a direct result of Bigge's conduct.

## THE DEALER AGREEMENT

25.     On October 1, 2017, Tadano and Bigge entered into the Agreement. *See* Ex. 1. Pursuant to the Agreement, Bigge was appointed a non-exclusive dealer of Tadano rough terrain

cranes and all terrain cranes in Arizona, Colorado, New Mexico, and Utah. *See id.*, pp. 1-2, § 2.1, Appendices A-B.

26.     Bigge agreed to the following obligations, among others:

- Pursuant to § 3.1, Bigge agreed to "use its best efforts, at its own risk and cost, to develop the market for, and promote sales and use of, Products in the Territory and shall concentrate its efforts within the Territory to that end."

- Pursuant to § 3.2(4), Bigge agreed "to maintain adequate new whole goods and rental fleet inventories/stock to service the Territory to achieve a leading market share of 40% for GR Series Rough Terrain Cranes and 25% for ATF Series All Terrain Cranes ([Tadano] market share is calculated on the combined sales by Parties in the Territory)."

- Pursuant to § 3.2(11), Bigge agreed "to furnish to [Tadano], at least once during each Dealer's fiscal year during the term of this Agreement, Dealer's financial statements, including current balance sheets, statements of changes in working capital and profit and loss statements prepared by a certified public accountant."

- Pursuant to § 3.2(15), Bigge agreed "to meet such other reasonable standards of performance as may be established by [Tadano] and communicated to Dealer in writing (including such sales and/or purchase quantity targets as [Tadano] and Dealer from time to time agree upon in writing); Dealer and all of its affiliated companies agree to purchase predominantly Tadano GR Series Rough Terrain Cranes for their rental fleets, internal use and resale across all North American operations; "predominantly" is defined as a minimum of 80% of all Dealer's and

Dealer-affiliated companies' total purchases of Rough Terrain Cranes measured by number of units."

- Pursuant to § 3.3, Bigge agreed to "immediately notify [Tadano] of the occurrence of any event that would give [Tadano] the right to terminate this Agreement as provided in Section 11.2."

- Pursuant to § 11.2(4) Bigge agreed that Tadano may terminate the Agreement immediately if Bigge "knowingly makes any material false statement, representation or claim to [Tadano]."

- Pursuant to § 11.2(6), Bigge agreed that Tadano may terminate the Agreement immediately if there was any sale, transfer or relinquishment of any substantial interest in the ownership or active management of Bigge, without prior written approval of Tadano.

- Pursuant to § 11.2(9), Bigge agreed that Tadano may terminate the Agreement immediately if Bigge "violates any material provision of this Agreement."

- Pursuant to § 12.1, Bigge agreed not to use Tadano's "Marks" (defined in Article VI) without prior permission of Tadano.

- Pursuant to § 12.2, Bigge agreed "to execute all reasonable documents, and take all actions, that may be necessary to confirm" Tadano's intellectual property rights in "Products" (defined in Article I) or related Product information, documentation or materials, and all derivative works and improvements thereof.

27.    Despite its agreements regarding purchase requirements, since 2024 Bigge has failed to maintain an adequate stock of rough terrain cranes and all terrain cranes.

9

28. Despite its agreement regarding purchase requirements, since 2024 Bigge has failed to make minimum purchases.

29. Beginning in 2025, Bigge became a dealer of cranes designed and manufactured by Sany, a Chinese corporation authorized to do business and headquartered in Peachtree City, Georgia, and a direct competitor of Tadano.

30. Bigge's principal, Weston Settlemier recently advised Tadano that Bigge and/or an affiliated company has ordered many Sany rough terrain cranes for delivery in 2026.

31. When the Agreement was signed in 2017, Tadano understood that Bigge was owned 50/50 by Weston Settlemier and Reid Settlemier.

32. While discussing the color scheme issues described above, Weston Settlemier stated that he was only one of nine owners, i.e., the ownership structure had changed.

33. On January 15, 2026, Weston Settlemier filed a Petition for Appointment of Provisional Director in the Superior Court of the State of California, County of Alameda, Case No. 26CV164766. A copy of the Petition is attached as Exhibit 3.

34. The Petition represents that ownership of Bigge is different from what Tadano understood and different from what Weston Settlemier previously represented.

35. The Petition also alleged that due to a deadlock between the owners Bigge could not "operate, legally or practically speaking, to an advantage, and they will suffer substantial losses, damages and liabilities, including potentially breaching contracts with third parties, until the deadlock is broken and a business plan and capital expenditures are approved." *Id.*, ¶ 14.

36. On March 19, 2026, the Petition was dismissed; however, Tadano is not privy to how the dispute was resolved or whether any of the issues raised therein remain.

37.     Bigge did not notify Tadano of the change in ownership much less obtain Tadano's written approval.

38.     As set forth above, Bigge improperly used Tadano's Marks (defined in Article VI of the Agreement) and engaged in anti-competitive behavior.

39.     By these actions Bigge failed to use its best efforts to promote the sale and use of Tadano cranes in the Territory under § 3.1, and also breached §§ 3.2(4), 3.2(11), 3.2(15), 3.3, 11.2(4), 11.2(6), 11.2(9), 12.1, and 12.2 of the Agreement.

40.     On April 3, 2026, Tadano provided Bigge with a notice of Tadano's intent to not renew/terminate the Agreement upon its expiration on October 1, 2026. *See* Ex. 2. In that same correspondence, Tadano gave notice to Bigge of several grounds establishing good cause under the Agreement and under Texas dealer laws for Tadano's nonrenewal/termination of the Agreement, and gave Bigge sixty days within which to cure the deficiencies. *Id.*

41.     The Agreement is currently still in effect. As indicated in Tadano's correspondence of April 3, 2026, until the nonrenewal takes effect on October 1, 2026, Tadano will continue "business as usual" under the Agreement. *Id.*

### THE TADANO COLORS

42.     Rough terrain cranes constitute a category of construction lifting equipment featuring a heavy-duty carriage with large tires for off-road travel, with a telescopic boom that extends and retracts to lift and move heavy loads.

43.     The large crane business is extremely competitive and manufacturers, including Tadano, often use unique color schemes to identify their cranes and permit the public to readily identify them; Tadano uses its signature paint scheme of Tadano Colors—white and blue. The

following table identifies standard colors used by some exemplary manufacturers of rough terrain

cranes:

| Rough Terrain Crane Manufacturer | Standard Rough Terrain Crane Colors |
|---|---|
| Tadano | Blue & White |
| Sany | Red & Yellow |
| Grove | Yellow |
| Link Belt | Red & White |

12

| Terex | White |
|---|---|
| | |
| Liebherr | White & Gray |
| | |
| Zoomlion | Lime green & Gray |
| | |

44.    For more than twenty years, Tadano has manufactured and sold rough terrain cranes with the Tadano Colors thereby creating a distinctive, consistent look that distinguishes Tadano's rough terrain cranes from its competitors' products.

45.    Tadano's claimed trade dress consists of the following combination of elements as applied to rough terrain cranes: (1) the telescopic boom, extending jib, and operator's cabin are white; (2) the hoist system, wheel rims, and carriage elements (other than the operator's cabin) are blue; and (3) the hook block is painted in an alternating striped pattern of white and blue. This

13

distinctive combination of colors applied to specific rough terrain crane components constitutes a consistent, recognizable, and source-identifying visual impression that Tadano's name and trademark, prominently displayed on the boom and counterweight tray, reinforces but does not itself constitute the claimed trade dress.

46. The Tadano Colors are not functional under any applicable legal test. The white-and-blue color scheme is not essential to the use or purpose of rough terrain cranes: it does not improve structural integrity, lifting capacity, mechanical performance, operator safety, or durability. The Tadano Colors do not affect the cost or quality of manufacturing rough terrain cranes; applying the Tadano Colors costs the same as applying any other color scheme. As the table set forth above demonstrates, competitors successfully use a wide variety of alternative color schemes—including red and yellow (Sany), yellow (Grove), red and white (Link Belt), white (Terex), white and gray (Liebherr), and lime green and gray (Zoomlion)—confirming that granting Tadano exclusive rights to the Tadano Colors would not place competitors at a significant disadvantage. The Tadano Colors were selected and are maintained solely for their source-identifying function, not for any utilitarian purpose.

47. The image below accurately represents one current model of Tadano's as-manufactured rough terrain cranes, the GR-550XL, bearing the Tadano Colors:



48.     Tadano has incurred significant investments over decades to develop and foster the reputation, recognition, and goodwill associated with its rough terrain cranes and their corresponding Tadano Colors around the world.

49.     Rough terrain cranes bearing the Tadano Colors have been enormously successful for Tadano. The Tadano Colors are an extremely valuable intellectual property asset of the company.

50.     Since at least 2003, a material percentage of Tadano's global revenues have been derived from sales of rough terrain cranes bearing the Tadano Colors and blue crane carriages with white booms. Since beginning to use the Tadano Colors as a brand identifier of its rough terrain cranes, Tadano has grown to be the North America rough terrain market leader, holding approximately 49% of the market.  On information and belief, Sany holds a low single-digit market share of the rough terrain market in North America.

51.     Tadano has invested substantial sums in advertising and promotional activities that feature the Tadano Colors as a central brand identifier, including trade show exhibitions, print and digital advertising in industry publications, branded merchandise, and promotional materials distributed to customers at industry events.

52.     On information and belief, dealers, customers, crane operators, jobsite personnel, and other participants in the rough terrain crane industry associate the Tadano Colors exclusively with Tadano.

53.     The Tadano Colors and blue crane carriages with white booms are strong source identifiers by virtue of Tadano's long use, extensive promotion, and acquired distinctiveness. They are highly recognized and serve to identify Tadano as the source of these high-quality, reliable rough terrain cranes.

54.    By virtue of their use, Tadano has the exclusive right to use the Tadano Colors, as well as blue crane carriages with white booms, and any marks confusingly similar to them in commerce in connection with rough terrain cranes.

55.    On the other hand, Defendant Sany also manufactures rough terrain cranes for sale and use in the United States and globally. The image immediately below accurately represents one current as-manufactured model of Defendant Sany's rough terrain cranes in Sany's primary colors—red and yellow:



56.    Bigge is a distributor authorized to sell and rent rough terrain cranes manufactured by Tadano, Sany, and others. AI is a Sany dealer and facilitated—at the direction of Bigge—the purchase of the Sany rough terrain cranes that improperly and unlawfully use the Tadano Colors. Indeed, Sany's website identifies "Automated Investing LLC" located at 8300 McHard Road, Houston, TX 77053 as a Sany dealership—the same address as Bigge's permanent branch facility.

57.    Bigge advertises its fleet of various cranes and products as the "Perfect Fleet." Bigge describes its Perfect Fleet as follows:

> "The Perfect Fleet® is a curated collection of top-tier cranes and heavy-lifting equipment meticulously selected for their diverse capabilities, focus on safety, lower cost of ownership and operation, and long track record of

16

reliability. We deploy the Perfect Fleet to our customers daily to meet the diverse needs of complex construction, industrial, and heavy-lifting projects."[5]

58.     Bigge therefore advertises itself as a purveyor of different cranes, made by different manufacturers.

59.     On information and belief, AI's position as the Sany dealer—as opposed to Bigge—is a deliberate action by Bigge.

60.     Further, by painting (or directing others to paint) Sany rough terrain cranes in Tadano Colors, Defendants intentionally seek to confuse consumers about the origin and/or association of those cranes.

61.     Defendants' deliberate decision to copy the Tadano Colors on Sany cranes—rather than using Sany's own red-and-yellow color scheme—is itself powerful evidence that the Tadano Colors have acquired secondary meaning, because there is no logical reason for the precise copying save an attempt to benefit from a secondary meaning that does exist.

## DEFENDANTS' INFRINGING ACTIVITIES

62.     Bigge is an authorized distributor of Tadano's cranes, including rough terrain cranes with the Tadano Colors, pursuant to the parties' Agreement. The cranes are purchased by Bigge and typically placed into Bigge's rental fleet to support Bigge's customers across the country.

63.     Tadano offered Bigge a standard dealer discount on its purchase of Tadano's rough terrain cranes..

64.     Bigge largely abandoned its General Duties under the Agreement, including its § 3.1 obligation to "use its best efforts … to develop the market for, and promote sales and use of,

---

[5] https://www.bigge.com/why-bigge/perfect-fleet/.

Products in the Territory." Bigge similarly materially breached its Additional Specific Duties described in § 3.2 of the Agreement, particularly as they relate to the marketing, promotion, and sale of Tadano's rough terrain cranes.

65. Bigge and/or Defendant AI began to market and promote cheaper and lower quality Sany branded rough terrain cranes using the Tadano Colors. This practice was undertaken by Bigge with the intentional objective of violating Tadano's intellectual property rights and in retaliation for the discontinuation of the discount.

66. On information and belief, Bigge, through its corporate affiliate AI imported about 20 Sany rough terrain cranes. On information and belief, Bigge and/or AI directed Sany to paint these 20 Sany rough terrain cranes in the Tadano Colors. Tadano learned of this intentional misrepresentation by Defendants on or around August 2025, when Tadano was alerted about the apparent existence of a Sany crane painted in Tadano Colors present in Bigge's Houston location.

67. More specifically, Sany—at the direction of Bigge and/or AI—replaced its typical yellow and red color scheme on its rough terrain Sany cranes with the Tadano Colors paint scheme to incorporate the blue wheel rims and truck components that were paired with predominantly white booms.

68. A side-by-side comparison shows the typical Sany rough terrain crane compared to the repainted Sany rough terrain crane:

| Typical Sany Rough Terrain Crane | Bigge/Sany Rough Terrain Crane |
|---|---|
|  |

69.     This side-by-side comparison demonstrates the similarity between the Tadano rough terrain cranes and the repainted Sany rough terrain cranes:

| Tadano's Rough Terrain (RT) Crane | Bigge/Sany Rough Terrain Crane |
|---|---|
|  |

70.     This repainting of the Sany RT cranes to incorporate the Tadano Colors was done intentionally with the purpose of deliberately misleading consumers.

71.     Defendants' unauthorized use of the Tadano Colors on Sany rough terrain cranes creates a likelihood of confusion among relevant consumers. Specifically: (a) the Tadano Colors constitute a strong and distinctive trade dress in the rough terrain crane market by virtue of more than 20 years of continuous, exclusive use; (b) the color scheme applied to the repainted Sany

cranes is virtually identical to the Tadano Colors, incorporating the same white booms and blue carriages; (c) the products at issue are identical—both are rough terrain cranes used in the same applications; (d) Tadano and Defendants sell and rent rough terrain cranes to the same customers through the same distribution channels, including on the same jobsites; (e) Tadano and Defendants advertise rough terrain cranes through the same trade publications, industry events, and digital channels; (f) Defendants intentionally copied the Tadano Colors to trade on Tadano's reputation and goodwill; and (g) on information and belief, instances of actual confusion have already occurred.

72.     Although some direct purchasers and renters of rough terrain cranes may be sophisticated entities that exercise care in procurement decisions, the relevant consuming public extends beyond direct purchasers. Jobsite workers, crane operators, safety inspectors, subcontractors, project managers, and members of the public who observe cranes at construction sites rely on visual cues—including color schemes—to identify crane manufacturers. These audiences exercise less care and are susceptible to confusion based on visual impression alone. Moreover, even sophisticated purchasers may be confused as to sponsorship, affiliation, or approval—for example, they may believe that Sany cranes painted in the Tadano Colors are manufactured under license from Tadano, endorsed by Tadano, or produced through a joint venture between Tadano and Sany. Likelihood of confusion as to sponsorship or affiliation is independently actionable under 15 U.S.C. § 1125(a).

73.     Through its counsel, Tadano demanded that Defendants cease all further use, and refrain from any future use, of the Tadano Colors in connection with rough terrain cranes.

74.     When Tadano approached Bigge about this blatant attempt to capitalize on Tadano's reputation and goodwill, Bigge denied any wrongdoing but ultimately agreed to repaint

20

the 20 Sany cranes with a white counterweight in an effort to distinguish Bigge's Sany rough terrain cranes from the Tadano rough terrain cranes.

75.　　As of the date of this Complaint, Defendants have refused to comply with the demands to refrain from violating Tadano's statutory and common law rights with respect to its exclusive use of the Tadano Colors.

## <u>COUNT I: ALL DEFENDANTS</u>

### FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

76.　　Tadano incorporates by reference the preceding paragraphs of this Complaint.

77.　　The Tadano Colors are a designation of origin that identifies Tadano as the exclusive source of its rough terrain cranes and distinguishes Tadano's rough terrain cranes from Sany's and all others in the marketplace for rough terrain cranes.

78.　　Defendants' use of the Tadano Colors in interstate commerce constitutes a false designation of origin, false or misleading description, and false or misleading representation. Defendants' use of identical or confusingly similar variations of the Tadano Colors is likely to cause, or has caused, confusion or mistake, or is likely to deceive consumers into believing that Defendants' lower quality products are sponsored by, approved by, manufactured by, or are otherwise affiliated with Tadano.

79.　　Such false designations, descriptions, and representations constitute unfair competition and represent an infringement of Tadano's rights in the Tadano Colors in violation of Section 1125(a) of the Lanham Act.

80.　　Because of Defendants' above-described conduct, Tadano has suffered, will suffer and/or continues to suffer damages, in an amount to be proven at trial, including, without limitation, the loss of revenue and reputation but for Defendants' acts, and the loss of goodwill

21

and exclusivity in Plaintiff's trademark, including diversion of prospective customers and loss of control over Plaintiff's reputation among potential consumers.

81.    Because of Defendants' above-described conduct, Defendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

82.    Tadano has been, and will continue to be, damaged by Defendants' false representations, false designations of origin, and other acts of unfair competition, in a manner and amount that cannot be fully compensated or measured in monetary terms.

83.    Defendants' coordinated actions have damaged, and will continue to damage, Tadano's market, reputation, and goodwill, and will discourage current and potential customers from dealing with Tadano. Such irreparable harm will continue unless the actions of Defendants are enjoined and Defendants are ordered to stop using the Tadano Colors in connection with rough terrain cranes.

84.    Defendants' actions were taken in willful, deliberate, and/or intentional disregard of Plaintiff's rights. Plaintiff is entitled to recover treble damages, Plaintiff's attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117. Defendants' infringement is 'exceptional' within the meaning of 15 U.S.C. § 1117(a).

## COUNT II: ALL DEFENDANTS

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1125(a)

85.    Tadano incorporates by reference the preceding paragraphs of this Complaint.

86.    By reason of Tadano's extensive use and promotion of products utilizing the Tadano Colors, Tadano has obtained a protected right to the exclusive use of Tadano Colors, i.e., white and blue, on rough terrain cranes, both in the State of Texas and elsewhere in the United

States. Through such use and promotion, the Tadano Colors affixed to rough terrain cranes have acquired secondary meaning such that they are protectable trade dress.

87.    The overall appearance and use of the Tadano Colors is not dictated by function, and Tadano Colors are not functional in any way. Instead, the Tadano Colors were carefully selected and utilized to identify a single source, that is, Tadano.

88.    Defendants' use of the Tadano Colors is likely to cause, and has caused confusion or mistake, or is likely to deceive consumers into believing that Defendants' products or commercial activities are sponsored by, approved by, manufactured by, or otherwise affiliated with Tadano.

89.    Defendants' acts constitute infringement of Tadano's trademark in the use of the Tadano Colors.

90.    Because of Defendants' above-described conduct, Tadano has suffered, will suffer and/or continues to suffer damages, in an amount to be proven at trial, including, without limitation, the loss of revenue and reputation but for Defendants' acts, and the loss of goodwill and exclusivity in Plaintiff's trademark, including diversion of prospective customers and loss of control over Plaintiff's reputation among potential consumers.

91.    Because of Defendants' above-described conduct, Defendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unlawful conduct.

92.    Tadano has been, and will continue to be, damaged by Defendants in a manner that cannot be fully compensated or measured in monetary terms.

93.    Defendants' actions have damaged, and will continue to damage, Tadano's market, reputation, and goodwill, and will discourage or disincentivize current and potential customers

from dealing with Tadano. Such irreparable harm will continue unless the actions of Defendants are enjoined and Defendants are ordered to stop using the Tadano Colors in connection with rough terrain cranes.

94.    Defendants' actions were taken in willful, deliberate, and/or intentional disregard of Plaintiff's rights. Plaintiff is entitled to recover treble damages, Plaintiff's attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117. Defendants' infringement is 'exceptional' within the meaning of 15 U.S.C. § 1117(a).

## COUNT III: ALL DEFENDANTS

### TEXAS COMMON LAW TRADEMARK INFRINGEMENT

95.    Tadano incorporates by reference the preceding paragraphs of this Complaint.

96.    By reason of Tadano's extensive use and promotion of products utilizing the Tadano Colors, Tadano has obtained a protected right to the exclusive use of Tadano Colors, i.e., white and blue, on rough terrain cranes, both in the State of Texas and elsewhere in the United States. Through such use and promotion, the Tadano Colors affixed to rough terrain cranes have acquired secondary meaning such that they are protectable trade dress.

97.    The overall appearance and use of the Tadano Colors is not dictated by function, and Tadano Colors are not functional in any way. Instead, the Tadano Colors were carefully selected and utilized to identify a single source, that is, Tadano.

98.    Defendants' use of the Tadano Colors is likely to cause, and has caused confusion or mistake, or is likely to deceive consumers into believing that Defendants' products or commercial activities are sponsored by, approved by, manufactured by, or otherwise affiliated with Tadano.

99.    Defendants' acts constitute infringement of Tadano's trademark in the use of the Tadano Colors.

24

100. Because of Defendants' above-described conduct, Tadano has suffered, will suffer and/or continues to suffer damages, including, without limitation, unjust enrichment damages, in an amount to be proven at trial.

101. Tadano has been, and will continue to be, damaged by Defendants in a manner that cannot be fully compensated or measured in monetary terms.

102. Defendants' actions have damaged, and will continue to damage, Tadano's market, reputation, and goodwill, and will discourage or disincentivize current and potential customers from dealing with Tadano. Such irreparable harm will continue unless the actions of Defendants are enjoined and Defendants are ordered to stop using the Tadano Colors in connection with rough terrain cranes.

103. Defendants' acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Tadano's rights and with intent to cause confusion, and to trade off of the vast goodwill in Tadano's trademark, making this an exceptional case and entitling Tadano to enhanced damages and attorneys' fees at least as provided under Texas Civil Practices & Remedies Code § 41.003.

**COUNT IV: ALL DEFENDANTS**

**TEXAS COMMON LAW UNFAIR COMPETITION**

104. Tadano incorporates by reference the preceding paragraphs of this Complaint.

105. Defendants' unfair competition is grounded in and derived from their trademark infringement, false designation of origin, and misappropriation as alleged in Counts I through III and Count V of this Complaint. Defendants' passing off of Sany rough terrain cranes as Tadano products, through the deliberate application of the Tadano Colors to rough terrain cranes not manufactured by Tadano, constitutes independently unlawful conduct sufficient to support this claim.

106. Defendants' use of the Tadano Colors on Sany rough terrain cranes is intended to trade on Tadano's investment in and goodwill surrounding the Tadano Colors in a manner that is contrary to honest practice in business matters.

107. Defendants' actions were carried out for the purpose of securing a business advantage and have resulted in commercial harm to Tadano.

108. Defendants' acts as alleged herein constitute infringement and are likely to cause confusion, mistake, and/or deceive consumers into falsely believing that there exists an affiliation, connection, or association between Defendants and Tadano and damages Tadano's ability to compete.

109. Tadano has suffered actual damages as a proximate cause of Defendants' conduct, at least through lost goodwill, reputation, and customers.

110. Defendants' acts as alleged herein have caused and will continue to cause Tadano irreparable harm for which Tadano has no adequate remedy at law, in that (i) Tadano has unique and valuable property rights in its distinctive Tadano Colors trade dress; (ii) Defendants' trademark infringement constitutes a substantial interference with Tadano's goodwill and customer relationships; and (iii) Defendants' activities, and the harm resulting to Tadano, continues. Therefore, Tadano is entitled to preliminary and permanent injunctive relief.

## COUNT V: ALL DEFENDANTS

### COMMON LAW UNFAIR COMPETITION BY MISAPPROPRIATION

111. Tadano incorporates by reference the preceding paragraphs of this Complaint.

112. Tadano competes with Defendant Sany in the manufacture and importation of rough terrain cranes. Tadano competes with Defendant Bigge in the retail, distribution, and rental of rough terrain cranes. On information and belief, AI is a corporate affiliate of Bigge and thus competes with Tadano in the retail, distribution, and rental of rough terrain cranes.

113.    Tadano created the Tadano Colors paint scheme for rough terrain cranes and related brand, goodwill, and marketing strategy through extensive time, labor, skill, and money. Additionally, Tadano has spent and continues to spend significant time, skill, labor, and money on their marketing and advertising campaigns specifically designed to associate the Tadano Colors with Tadano as a single source of high-quality rough terrain cranes.

114.    Defendants are using the Tadano Colors paint scheme for rough terrain cranes in direct competition with Tadano and have gained a special advantage in the competition as a result. For example, Defendants are unfairly competing with Tadano by misappropriating the Tadano Colors on Sany rough terrain cranes to improve the perceived quality and reliability of Defendant Sany's rough terrain cranes and Defendant Bigge's "Perfect Fleet."

115.    Further, Defendants' use of the Tadano Colors paint scheme on Sany rough terrain cranes creates competition with Tadano, thereby conferring Defendants with a special advantage in that competition because Defendants are burdened with little or none of the expense incurred by Tadano. By contrast, Defendants incurred only the trivial cost of repainting approximately 20 Sany cranes—a fraction of Tadano's decades-long investment—to appropriate the commercial benefit of the Tadano Colors' source-identifying function.

116.    Defendants' unauthorized, intentional, willful, and bad faith acts and practices as alleged herein constitute unfair competition in violation of Texas common law.

117.    Upon information and belief, the aforementioned conduct of Defendants will result in the misappropriation of and trading upon Tadano's brand, goodwill, and reputation at Tadano's expense and at no expense to Defendants—i.e., giving Defendants a competitive advantage or "free ride" off Tadano's established and stellar reputation in the market. The effect of Defendants' misappropriation of the goodwill symbolized by the Tadano Colors paint scheme on rough terrain

27

cranes is to unjustly enrich Defendants, damage Tadano, confuse and/or deceive the public, divert clients from Tadano, erode Tadano's market share and business opportunities, and harm Tadano's brand and reputation.

118.     Because of Defendants' unfair competition, Tadano has suffered irreparable harm to Plaintiff's trademark, brand, goodwill, and its reputation in the industry. Unless Defendants' conduct is restrained, Tadano will continue to be irreparably harmed.

119.     Tadano has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

120.     Tadano is entitled to, among other relief, preliminary and permanent injunctive relief and an award of actual damages, Defendants' profits, lost profits, and enhanced damages, reasonable attorneys' fees, and any other damages and further relief as may be deemed appropriate under Texas common law in an amount to be proved at trial.

## COUNT V: BIGGE

## DECLARATORY JUDGMENT

121.     Tadano incorporates by reference the preceding paragraphs of this Complaint.

122.     Tadano's claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., as an actual and justiciable controversy now exists between Tadano and Bigge with respect to their respective rights and obligations as set forth in the Agreement.

123.     Tadano contends that it has fully performed all of its obligations as set forth in the Agreement and that it has the right to terminate the Agreement and all other relationships currently existing between them on grounds that include Bigge's conspiring with the remaining Defendants to manufacture, import, sell and/or rent rough terrain cranes comprised of components with the Tadano Colors, but confusingly bearing Sany's name and marks; the failure to exercise best efforts in the performance of its General Duties and Additional Specific Duties as described more

28

particularly in the Agreement; the unjustified cancellation of orders by Bigge from Tadano and particularly for rough terrain cranes; and Bigge's anticipatory repudiation of duties moving forward to market and promote all the products that are the subject of the Agreement.

124. Tadano further contends that it has complied with the terms of the Agreement and Texas law governing equipment dealers in providing notice and a right to cure for its decision to nonrenew/terminate the Agreement.

125. Specifically, on April 3, 2026, Tadano issued written notice to Bigge of its intent to nonrenew/terminate the Agreement, which notice included the specific grounds constituting good cause under the Agreement and under Tex. Bus. & Com. Code §§ 57.154 and 57.155, and provided Bigge with sixty days within which to cure the identified deficiencies, as required by statute.

126. As set forth in the notice letter, Exhibit 2, Tadano provided Bigge with notice of Bigge's breaches of the Agreement: (a) failure to use best efforts to develop the market for, and promote sales and use of, Products in the Territory under § 3.1; (b) failure to maintain adequate new whole goods and rental fleet inventories/stock under § 3.2(4); (c) failure to furnish required financial statements under § 3.2(11); (d) failure to meet minimum purchase requirements and the 80% predominantly Tadano requirement under § 3.2(15); (e) failure to notify Tadano of events giving rise to termination rights under § 3.3; (f) making material false statements or representations under § 11.2(4); (g) effecting a change in ownership without prior written approval under § 11.2(6); (h) violation of material provisions of the Agreement under § 11.2(9); (i) unauthorized use of Tadano's Marks under § 12.1; and (j) failure to confirm Tadano's intellectual property rights under § 12.2.

127.    Contrary to Tadano's position, Bigge has taken the position that it has been and remains in compliance with the terms of the Agreement.

128.    There exists a substantial and immediate controversy between Tadano and Bigge of sufficient immediacy to warrant declaratory relief. Tadano seeks declarations of its rights and specifically that: (a) Tadano fulfilled all of its obligations as required by the Agreement and under applicable Texas dealer laws; (b) Bigge, directly or by proxy, has materially breached its obligations to Tadano including obligations arising from contract, statute, and equity; and (c) in accordance with the terms of the Agreement and Texas dealer laws Tadano may terminate the Agreement and all relationship between Tadano and Bigge without penalty.

## PRAYER FOR RELIEF

**WHEREFORE**, Tadano respectfully requests judgment and relief against Defendants as follows:

A.    That Defendants engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code;

B.    That Defendants engaged in common law unfair competition;

C.    That Defendants infringed Tadano's trade dress in violation of § 1125(a) of Title 15 in the United States Code and in violation of Tadano's common law rights;

D.    That Defendants have been unjustly enriched at Tadano's expense and disgorgement of all moneys realized by Defendants;

E.    An award of damages to Tadano, pursuant to 15 U.S.C. § 1117(a) and the common law of Texas, including prejudgment and post-judgment interest, in an amount adequate to compensate for Defendants' infringement and unfair competition;

30

F.  Tadano's actual costs and attorneys' fees as provided under the Lanham Act, 15 U.S.C. §§ 1117, 1125(a);

G.  A finding that this is an exceptional case and awarding Tadano enhanced damages and attorneys' fees under 15 U.S.C. § 1117;

H.  Exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

I.  A preliminary and permanent injunction prohibiting Defendants, and all those in active concert and participation with them, from using Tadano's blue-and-white trade dress, or any trade dress that is confusingly similar to Tadano's, in connection with rough terrain cranes manufactured by anyone other than Tadano, pursuant to 15 U.S.C. § 1116;

J.  A preliminary and permanent injunction prohibiting Defendants, and all those in active concert and participation with them, from using any false description, false representation, or false designation of origin, or any marks which falsely associate any non-Tadano rough terrain cranes with Tadano or tend to do so, or otherwise from engaging in any other activity constituting unfair competition with Tadano;

K.  An order that Defendants be directed to file with the Court and serve on Tadano, within thirty days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

L.  A declaratory judgment as described and requested above; and

M.  Such other and further relief—legal or equitable—as the Court deems necessary and just.

31

Dated: April 3, 2026

Respectfully submitted,

  */s/ M. Natalie Alfaro Gonzales*

M. Natalie Alfaro Gonzales

*Attorney-in-Charge*

State Bar No. 24069286

SDTX Bar No. 2156355

ngonzales@yettercoleman.com

Cary E. Hiltgen (*pro hac vice* forthcoming)

chiltgen@hbokc.law

Jeff C. Grotta (*pro hac vice* forthcoming)

jgrotta@hbokc.law

Hiltgen & Brewer, PC

9505 North Kelley Avenue

Oklahoma City, OK 73131

Telephone: (405) 605-9000

Facsimile: (405) 605-9010

Bailey Watkins

State Bar No. 24102244

SDTX Bar No. 3925065

bwatkins@yettercoleman.com

**YETTER COLEMAN LLP**

811 Main Street, Suite 4100

Houston, Texas 77002

Telephone: (713) 632-8000

Facsimile: (713) 632-8002


***Attorneys for Plaintiff Tadano America Corporation***